

**BENJAMIN MENDELSON**  
Assistant Solicitor General

(512) 936-1700  
Ben.Mendelson@oag.texas.gov

May 27, 2025

**Via CM/ECF**

Lyle W. Cayce, Clerk
United States Court of Appeals for the Fifth Circuit

 **Re:** No. 23-60635, *State of Texas v. United States Environmental Protection Agency*

Dear Mr. Cayce:

 The Court requested supplemental briefing regarding whether Texas remains injured by EPA's finding of failure to submit after the State submitted its SIP revisions on April 17. The Court also asked whether EPA's decision to approve or disapprove those SIP revisions would be reviewable in this case. In short, Texas still suffers at least two ongoing injuries fairly traceable to EPA's finding: (1) EPA continues to subject the State to illegal and unwanted procedures, namely, the SIP-review process that the State would not be required to undergo at this time absent EPA's finding; and (2) EPA has forced the State to choose between participating in EPA's ongoing SIP-review process or refusing to participate and subjecting the State's economy to an onerous and costly FIP. Each injury is sufficient to establish standing. Further, EPA's future decision to approve or disapprove Texas's SIP revisions would not be reviewable in this case because such a decision would be a separate agency action for which the State would need to seek separate relief via a new petition for review. Thus, the Court should not wait for EPA to act on the SIP revisions before deciding this case.

### I. Texas Has Two Ongoing Injuries Traceable to the Finding of Failure to Submit.

 As the Court knows, EPA entered its finding of failure to submit in October 2023. That finding ultimately forced the State to submit its SIP revisions under the threat of sanctions. But the State still has two injuries fairly traceable to the finding of failure to submit. First, the finding presently forces the State to participate in an invalid

administrative process, the SIP-review process. Second, the finding has presented the State with a forced choice, either participate in EPA's invalid process, or refuse and receive a FIP. Importantly, vacatur of the finding would redress both injuries because the State could withdraw its SIP revisions and stop participating in the SIP-review process.

### A. EPA has subjected the State to an invalid administrative process.

"It is established that 'subjection to unwanted procedures' in various contexts may confer standing." *Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 110 F.4th 762, 772 (5th Cir. 2024) (quoting 13A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3531.4 & n.140) (3d ed. Apr. 2023 update). In *Texas v. United States*, for example, the State challenged certain procedures promulgated by the Secretary of the Interior regarding Indian gaming proposals. 497 F.3d 491, 495 (5th Cir. 2007). Relevant here, the Secretary's procedures allowed an Indian tribe to submit a gaming proposal to the Secretary and outlined a decisional process depending on whether the relevant state chose to submit an alternative proposal. *Id.* at 494. If the State did not submit its own proposal, then the Secretary would review the tribe's proposal and either approve it or offer an informal conference between the State and the tribe to address disagreements and ultimately approve or disapprove the tribe's proposal. *Id.* at 494-95. If the State submitted an alternative gaming plan, then the Secretary would appoint a mediator to resolve differences between the State's and the tribe's proposal, but ultimately, the Secretary would approve either his own proposal or the mediator's. *Id.* at 495. In other words, the Secretary's procedures gave the States a tough choice: (1) "refuse to negotiate, participate (or not) in an informal conference, and take a chance that the Secretary will not accept the tribe's . . . proposal"; or (2) submit the state's proposal "to a mediator, with the certainty that . . . gaming must be approved on the mediator's or the Secretary's terms." *Id.* When an Indian tribe submitted a proposal to the Secretary, Texas sued and argued that the Secretary's procedures were illegal. *Id.*

The Court held that Texas had standing to challenge the procedures. Texas argued that these procedures violated a federal statute, such that the State "suffered the injury of being compelled to participate in an invalid administrative process," which was sufficient to establish standing. *Id.* at 496-97. Importantly, the federal government argued that Texas "faces nothing more than the possibility that the

Secretary might someday approve of gaming procedures for Kickapoo land," but the Court rejected that argument. *Id*. at 497. Rather, it held that "Texas is presently being subjected to an administrative process involving mediation and secretarial approval of gaming procedures," and the State contended that such procedures were illegal. *Id*. "Because Texas challenges the Secretary's authority to undertake this process, Texas has alleged a sufficient injury for standing purposes." *Id*; *see also Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (en banc) (burden of "being forced through a governmental administrative challenge" established standing to contest Government's authority "to impose the administrative proceeding").

Here, EPA's finding of failure to submit presently subjects the State to an administrative-review process that the State contends violates the APA. Pet.Br.16-22. "We assume, for purposes of the standing analysis, that Texas is correct on the merits of its claim that the [agency action] was promulgated in violation of the APA." *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019). And the finding of failure to submit triggered EPA's SIP-review process by putting Texas to the choice between submitting SIP revisions that it contends—and EPA once repeatedly assured—the State was not required to submit under a unilaterally dictated and artificially compressed timeframe or suffer the imposition of costly sanctions and a FIP on Texas's economy. *See* Pet.Br.11-12. When EPA entered its finding, it therefore coerced the State to do two things. First, it required the State to submit an administratively complete SIP revision within eighteen months or be sanctioned. Findings of Failure to Submit State Implementation Plan Revisions for Reclassified Moderate Nonattainment Areas for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 71,757, 71,759 (Oct. 18, 2023). The State ultimately relented and submitted its revisions in order to avoid sanctions. *See* ECF 104 at 4. But the finding of failure to submit also precipitated EPA's substantive review process of Texas's SIP revisions under the ongoing threat of a FIP, 88 Fed. Reg. at 71,759—a process that Texas has contended it is not required to undergo at this time due to EPA's administrative-law violations. As EPA said, it is "currently reviewing each SIP revision to determine its approvability and will announce [its] proposed decision in the *Federal Register*." ECF 104 at 5.

In short, the State's injury here is just like its injury in *Texas*. The State has "suffered the injury of being compelled to participate in an invalid administrative process." *Texas*, 497 F.3d at 496-97. And "Texas challenges the Secretary's authority to undertake this process," *id*. at 497, because it has argued that the finding

of failure to submit that initiated the SIP-review process is arbitrary and capricious under the APA, Pet.Br.16-17. To the extent that EPA argues that the State's only injury is the possibility that the agency might impose a FIP in the future, this Court rejected a similar argument in *Texas*. There, the federal government argued that the State's only injury was the "possibility that the Secretary might someday approve of gaming procedures" that would harm the State. *Texas*, 497 F.3d at 497. But the Court explained that the State was "presently being subjected to an administrative process" that it contended was illegal, which formed a "sufficient injury for standing purposes." *Id*. The same is true here.

### B. EPA has subjected the State to a forced choice.

Being subjected to a "forced choice" is also an independently sufficient injury to support standing. *Id.*; *see Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 582 (1985). In *Texas*, the Court explained that the State's "only alternative to participating in [the] allegedly invalid process is to forfeit its sole opportunity to comment upon Kickapoo gaming regulations, a forced choice that is itself sufficient to support standing." 497 F.3d at 497. So, if a regulator forces a regulated party "to choose between participating in a process [the regulated party] considers unlawful and forgoing any benefit from that allegedly unlawful process" then such a forced choice is a sufficient injury for standing purposes. *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1218 (10th Cir. 2017).

Here, EPA has forced the State to choose between undergoing the SIP-review process, which the State considers unlawful, and hoping that its SIP revisions are approved, or not participating in the SIP-review process and foregoing the chance that EPA will approve the SIP revisions and ensuring the imposition of a FIP. *See* 42 U.S.C. § 7410(c)(1)(A). And even though EPA has already forced the State to submit to that process, the Court may still redress that injury by vacating the finding of failure to submit. If the Court did so, then the State could withdraw its SIP revisions and stop participating in the SIP-review process. Indeed, states may withdraw SIP revisions during EPA's review process. *See* Approval and Promulgation of Air Quality Implementation Plans; Maryland; Revision to Emission Limitations for R. Paul Smith Power Station; Withdrawal of Proposed Rule, 78 Fed. Reg. 59,317-02 (Sept. 26, 2013); Approval and Promulgation of Air Quality Implementation Plans; New Hampshire; Withdrawal of Proposed Rulemaking to Control Gasoline Fuel Parameters and Remove the Reformulated Gasoline Program From Four Counties

in New Hampshire, 71 Fed. Reg. 47,161-01, 47,162 (Aug. 16, 2006); Air Plan Approval; WA; Excess Emissions, Startup, Shutdown, and Malfunction Revisions, 88 Fed. Reg. 89,582, 89,582 (Dec. 28, 2023). Thus, EPA has forced the State to choose between participating in the SIP-review process which the State maintains violates the APA or not participating and receiving the burdens of a FIP. That forced choice is a sufficient injury for standing purposes.

### C. The State is entitled to special solicitude.

Texas does not need special solicitude to establish standing in this case because EPA has both subjected it to an invalid administrative process and put the State to a forced choice. Nonetheless, "[t]o eliminate any doubt as to standing" the State is entitled to special solicitude in the standing analysis. *Gen. Land Off. v. Biden*, 71 F.4th 264, 274 (5th Cir. 2023). "To receive this benefit, a state must demonstrate (i) it has a procedural right to challenge the action in question, and (ii) the challenged action affects one of its quasi-sovereign interests." *Id*. Here, "Texas proceeds under the APA, which this court has held sufficient to satisfy the first prong of the analysis." *Id*. As to the second prong, the State unquestionably has a quasi-sovereign interest in regulating its own air. As the Supreme Court explained in the seminal special-solicitude case, the State has a quasi-sovereign interest "in all the earth and air within its domain." *Massachusetts v. EPA*, 549 U.S. 497, 519 (2007); *see Texas v. United States*, 50 F.4th 498, 515 (5th Cir. 2022) (explaining that in *Massachusetts v. EPA*, the Supreme Court deemed "regulating emissions" a quasi-sovereign interest). Because EPA's finding of failure to submit affects the State's ability to regulate its own air, Pet.Br.7-8, special solicitude applies and eliminates any doubt as to standing.

### II. EPA's Future Decision on the State's SIP Submittal is Not Reviewable in This Case.

If the State were to challenge EPA's future decision regarding the State's April 17, 2025, SIP submittals, then it would need to file a new petition for review because it would be challenging separate agency action. A petition for review of agency action must "specify the order or part thereof to be reviewed." Fed. R. App. P. 15(a)(2)(C). "Failure to specify the correct order can result in dismissal of the petition." *LaRouche's Comm. for a New Bretton Woods v. Fed. Election Comm'n.*, 439 F.3d 733, 739 (D.C. Cir. 2006). "A mistaken or inexact specification of the order to be reviewed will not be fatal to the petition, however, if the petitioner's intent to seek

review of a specific order can be fairly inferred from the petition for review or from other contemporaneous filings, and the respondent is not misled by the mistake." *Id*; *see Castillo-Rodriguez v. I.N.S.*, 929 F.2d 181, 183-84 (5th Cir. 1991); 16AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. 3961.1 (5th ed. May 2025 update).

In this case, the State's petition seeks review of EPA's finding of failure to submit, ECF 1-1 at 1-2, and the relief the State requested was vacatur of that rule as applied to Texas, Pet.Br.23. The State did not (and could not) have filed a petition for review of agency action that does not yet exist. A challenge to separate agency action like EPA's decision on the State's SIP would require the State to file a separate petition for review.

Further, the relief that the State seeks in this case could not redress the injury caused by a FIP if EPA promulgated one. A "plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668-69 (2021). In this case, the State seeks vacatur of the finding of failure to submit as applied to Texas. Pet.Br.23. If EPA were to publish a new rule promulgating a FIP, then the State would need to seek vacatur of that new rule to obtain relief. The State's requested relief in this case, vacating the finding of failure to submit, would not vacate a FIP if EPA promulgated one.

That a challenge to separate agency action requires a separate petition for review seeking separate relief also shows why one of EPA's recent arguments is wrong. EPA argued in its last supplemental brief that the State's separate petition for review in *Texas v. EPA*, No. 24-60425 (5th Cir.) ("*Reclassification*") is the proper "vehicle for adjudicating Texas's change-in-position and reliance arguments" such that the Court "should not reach these arguments in this case." ECF 99 at 7. That is wrong. This case and the reclassification case challenge separate agency actions and seek separate relief. Specifically, this case challenges the finding of failure to submit and seeks vacatur of that rule as applied to Texas. ECF 1-1 at 1-2; Pet.Br.23. By contrast, the reclassification case challenges separate agency action, namely, EPA's "legal conclusion that the Clean Air Act continues to obligate Texas to submit state implementation plan revisions pertaining to Moderate nonattainment for three areas that were reclassified to Serious nonattainment." *See* PFR at 1, *Reclassification*, No. 24-60425 (5th Cir. Aug. 20, 2024), ECF 1-2. That conclusion was published as part

of a rule separate from the finding of failure to submit and in a different part of the *Federal Register*, see Clean Air Act Reclassification of the San Antonio, Dallas-Fort Worth, and Houston-Galveston-Brazoria Ozone Nonattainment Areas; TX, 89 Fed. Reg. 51,829 (June 20, 2024), and the State seeks vacatur of that separate agency action in the reclassification case, Pet.Br.34, *Reclassification*, No. 24-60425 (5th Cir. Nov. 26, 2024), ECF 43. Critically, it is the finding of failure to submit, not the final rule challenged in the reclassification case, that triggered Texas's obligation to submit its SIP revisions on an unduly restrictive and unreasonable timeframe—or be sanctioned and pave the way for EPA to impose a FIP on Texas's economy. Vacatur of the rule challenged in the reclassification case would not release Texas from the unlawful obligations EPA foisted on the State through the finding of the failure to submit or otherwise alter that finding, regardless of whether both cases involve overlapping facts or legal issues. *Contra* ECF 99 at 7.

Finally, the Court should not wait to decide this case pending EPA's decision on the State's SIP revisions. According to EPA, the State faces a FIP clock that expires this November if EPA does not approve the State's SIP revisions, 88 Fed. Reg. at 71,759, and EPA hardly moves with alacrity. It admittedly blew a statutory deadline by eight months which precipitated this case, *see* Pet.Br.11, and the agency was recently sued and entered into a consent decree with a different plaintiff after that plaintiff alleged that EPA had missed statutory deadlines in *twenty-five* SIP submissions, some by years, *see* Complaint, Exhibit 1, at 1-3, *Our Children's Earth Found. v. Regan*, No. 1:23-cv-02848-CRC (D.D.C. Sept. 26, 2023), ECF 1-1. If future litigation regarding EPA's ultimate decision on whether to approve or disapprove Texas's SIP revisions is necessary, then it will be in a different case.

                                                Respectfully submitted.

                                                /s/Benjamin Wallace Mendelson

                                                Benjamin Wallace Mendelson
                                                Assistant Solicitor General

cc: all registered counsel (via CM/ECF)